## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 3:02-CR-206-K (01) |
| | ) | |
| JAMES BENJAMIN PUCKETT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant James Benjamin Puckett, proceeding *pro se*, moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Dkt. Nos. 166, 167. The Court appointed him counsel and directed Puckett to supplement his motion. *See* Dkt. Nos. 168-71. Puckett, with the assistance of counsel, supplemented the motion. *See* Dkt. No. 172. The government filed a court-ordered response, through which it opposes Puckett's request as unexhausted and, if exhausted, as without merit. *See* Dkt. Nos. 173-76. And Puckett replied to clarify language in his supplement to the motion. *See* Dkt. No. 177.

After carefully considering the record and the parties briefing, the Court **GRANTS** Puckett's request for compassionate release, **REDUCES** his sentence to time served, and **ORDERS** that he be immediately released from custody under the previously imposed conditions of supervised release. *See* Dkt. No. 110.

### Applicable Background

"In July 2002, James Puckett was indicted by a grand jury in the Northern District of Texas on one count of armed bank robbery, 18 U.S.C. § 2113(a), (d), and

one count of using a firearm during and in relation to a crime of violence, § 924(c)(1)."

*Puckett v. United States*, 556 U.S. 129, 131 (2009).

> On September 18, 2003, defendant pled guilty to one count of bank robbery and one count of possession of a firearm during a crime of violence. Under the terms of the plea bargain, the government agreed that defendant "has demonstrated acceptance of responsibility and thereby qualifies for a three-level reduction in his offense level." The government further agreed to request a sentence "at the lowest end of the guideline level deemed applicable by the Court." Consistent with the plea agreement, the government filed a motion for reduction of the offense level. Two months after pleading guilty but before sentencing, defendant suffered a seizure and was diagnosed with a benign brain tumor. As a result of his medical condition and related issues, sentencing was postponed for more than two years. When defendant was finally sentenced in May 2006, the government objected to any reduction in the offense level for acceptance of responsibility. That change of position was based on an addendum to the PSR which noted that, while in custody awaiting sentencing, defendant helped another inmate defraud the U.S. Postal Service. Although defense counsel objected to the supplemental PSR addendum, he did not object that the government breached its agreement that defendant qualified for a three-level reduction for acceptance of responsibility. The court declined to reduce the offense level, but did agree to sentence defendant at the low-end of the advisory guideline range. Punishment was assessed at 262 months on the bank robbery count and 84 months on the gun count, to be served consecutively as required by law, for a total of 346 months confinement. His conviction and sentence were affirmed on direct appeal.

*United States v. Puckett*, Nos. 3:02-CR-206-K, 3:10-CV-721-K, 2010 WL 5186628, at

*1 (N.D. Tex. Nov. 10, 2010) (citations and footnotes omitted), *rec. accepted*, 2010 WL

5102262 (N.D. Tex. Dec. 8, 2010) (denying initial motion to correct, vacate, or set

aside sentence under 28 U.S.C. § 2255).

## Legal Standards and Analysis

A district court lacks inherent authority to modify a defendant's sentence after

- 2 -

it has been imposed. *See* 18 U.S.C. § 3582(c). But, under § 3582(c)(1)(A), as amended by the First Step Act in 2018, "[a] court, on a motion by the BOP or by the defendant … may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)); *see id.* at 693 n.1.

"[M]otions for compassionate release are inherently discretionary." *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021). Indeed, as the statute provides, "a district court 'may' reduce an otherwise-eligible defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Id.* (quoting § 3582(c)(1)(A)).

I.   Puckett exhausted his administrative remedies.

Before a defendant may bring his own motion, "[t]he First Step Act, in clear language, specifies" that "a defendant must submit a request to 'the Bureau of Prisons to bring a motion on the defendant's behalf.'" *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) (quoting § 3582(c)(1)(A)).

> [A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with requesting that the BOP bring a motion on the defendant's behalf. Following that initial step, the prisoner has a choice. First, he may wait for a response from the BOP and seek further administrative review of that response (assuming it is adverse). On that path, only once he has exhausted all administrative rights to appeal may he bring his motion in the district court. Second, a prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court.

*United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021) (cleaned up).

This "prefiling administrative exhaustion requirement is not jurisdictional, but it is a mandatory claim-processing rule." *United States v. Harmon*, 834 F. App'x 101, 101-02 (5th Cir. 2021) (per curiam) (citing *Franco*, 973 F.3d at 467-68)). And, if "the Government properly raise[s] the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" *Id.* at 102 (quoting *Franco*, 973 F.3d at 468; emphasis by *Franco*).

Because the government "argues that [Puckett] failed to comply with the exhaustion requirement," "the Court must enforce the rule." *United States v. Walker*, Crim. A. No. 17-160, 2020 WL 6708385, at *1 (E.D. La. Nov. 16, 2020); *accord United States v. Duford*, 471 F. Supp. 3d 433, 435 (D.N.H. 2020). "This means that [Puckett] must demonstrate that [he] has satisfied the exhaustion requirement before [the Court] can consider the merits of [his] request." *Duford*, 471 F. Supp. 3d at 435 (citations omitted); *see also Walker*, 2020 WL 6708385, at *1 (observing that the defendant bears the burden of demonstrating exhaustion (citation omitted)).

The government asserts that, while Puckett's "motion shows that he submitted an informal request dated March 2, 2020, and the Warden responded noting that the defendant could appeal his response, [Puckett] did not exhaust his administrative remedies provided by the BOP." Dkt. No. 175 at 13 n.1 (citing Dkt. No. 176-1).

Puckett did indeed request that the BOP move for his compassionate release based on his health conditions—and the BOP denied his request on June 20, 2020. *See*

Dkt. No. 172-4.

But, contrary to the government's argument, to properly exhaust in this context, Puckett was required to do no more than request relief from the warden and then wait 30 days from the receipt of that request. *See Garrett*, 15 F.4th at 339 ("Section 3582(c)(1)(A) grants to the inmate the choice to take either of the two paths it provides. Once 30 days has 'lapse[d] ... from the receipt of such a request by the warden,' the prisoner may file his motion in the district court. § 3582(c)(1)(A). That is so irrespective of whether the BOP has responded to the request or whether the inmate has administrative appeals available to him." So, "[i]t is of no consequence when the BOP responds to an inmate's request—once '30 days from the *receipt* of such a request by the warden' has passed, the defendant may file in the district court" and is "not required to pursue his administrative-appeals process to its conclusion merely because the BOP responded to his motion within 30 days." (quoting § 3582(c)(1)(A); citing *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them. Prisoners lack that luxury under the PLRA.")))

Accordingly, evidence in Puckett's supplement (the June 20, 2020 denial of his request to the BOP) carries his burden to show that 30 days elapsed from the BOP's receipt of the request for compassionate release to his filing in this Court and thus demonstrates that Puckett satisfied the prefiling requirement of administrative

exhaustion raised by the government.

    II.    An extraordinary and compelling reason supports reducing Puckett's <u>sentence.</u>

Although the First Step Act empowers defendants to file motions under § 3582(c)(1)(A) "directly in district court," *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021), the Act left in place the three "other requirements" to obtain relief— that [1] prisoners "still must show 'extraordinary reasons'; [2] they still must show that compassionate release is consistent with applicable policy statements from the [United States Sentencing] Commission; and [3] they still must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors,'" *id.* (quoting *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021)).

Where an inmate files a motion on his own behalf, however, the second requirement no longer applies. *See Cooper*, 996 F.3d at 288 ("[B]ecause [U.S. Sentencing Guidelines Manual (U.S.S.G.)] § 1B1.13 is not an 'applicable policy statement' to compassionate release motions filed by prisoners, 'neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582.'" (quoting *Shkambi*, 993 F.3d at 392-93)); *United States v. Coats*, 853 F. App'x 941, 942 (5th Cir. 2021) (per curiam) ("In *United States v. Shkambi*, this court joined our sister circuits in holding that § 1B1.13 does not actually apply to § 3582(c)(1)(A)(i) motions brought by the inmate." (citation omitted)).

"Consequently, a district court considering a prisoner-filed motion is bound only by § 3582(c)(1)(A)(i) and the § 3553(a) sentencing factors." *United States v. Hampton*,

No. 21-60056, 2021 WL 5409245, at *3 (5th Cir. Nov. 18, 2021) (per curiam) (citing *Shkambi*, 993 F.3d at 392).

Beginning with § 3582(c)(1)(A)(i), Puckett, who is 59 years old, argues that "his well-documented and serious medical conditions, including brain cancer and brain tumors" are "extraordinary and compelling reasons to grant relief." Dkt. No. 172 at 1 (citing Dkt. No. 172-4 (BOP denial dated June 20, 2020, finding "[w]hile you have been treated for Brain Tumors, High Blood Pressure, High Cholesterol, COPD, Sleep Apnea, Hepatitis C, Asthma, Chronic Knee and Back Pain, Chronic Migraines due to Trauma, Cataracts, Stroke Symptoms, Irregular Heartbeat, Fall Alert and Brain Cancer, you do not meet the criteria of a debilitated medical condition. You are not confined to a bed or chair more than 50% of waking hours. You are able to provide self-care and it does not significantly affect your ability to function in a correctional setting. You do not meet medical criteria and are not appropriate for [Reduction in Sentence] consideration at this time.")).

Puckett argues that his current "unique medical complications are the driving force behind his request for compassionate release" and further observes—as reflected in the applicable background above—that, "before [he] was sentenced on May 4, 2006, his medical issues were clear. Indeed, the Supplemental Addendum to the Presentence Report ('PSR') notes that '[a]ccording to medical records provided by the Fort Worth Federal Medical Center … and the [Mansfield Law Enforcement Center], the defendant underwent brain surgery on December 24, 2003, to remove a tumor in the

left temporal lobe of his brain.' That recurring brain cancer continues to persist." Dkt.

No. 172 at 9.

Specific to Puckett's current neurological condition, the government provides a

declaration from the clinical director at Puckett's institution, a physician who has also

provided medical care to Puckett:

> I reviewed Puckett's medical records regarding his neurological condition. The most recent MRI performed on Puckett, on October 18, 2021, shows no evidence of any residual tumor or meningioma. The MRI showed an area of encephalomalcia, or softening of that area of the brain, which would be a consequence of the prior radiation treatment in 2012. The medical records show that Puckett's earlier tumor was not malignant (or "cancerous") and his prognosis is good.
> According to my September 2, 2021 medical note, Puckett refused an MRI of his brain 2 times in 2018 and once in 2017. The previous MRI was done in 2015, which showed post-surgical changes but no evidence of tumor recurrence.
> Further regarding my September 2, 2021 note regarding seizures, Puckett's last documented seizure was in 2016, and the seizure medication was discontinued at a previous institution because Puckett has a history of non-compliance with medications and undetectable levels of seizure medication (Lamictal). A consultation with a neurologist suggested pseudo-seizures – in other words the seizures were false. There is no evidence in the record to support the use of anti-seizure medication at this time, and there is a plan to schedule with neurology if there is any recurrence. Puckett's prognosis regarding his neurological condition is excellent.

Dkt. No. 176-2 (Timothy Young, M.D. Decl.) at 1-2.

In response to Dr. Young's declaration, Puckett clarifies that references to

"recurring brain cancer" in his supplement should be more precisely characterized as

"recurring brain meningioma" and responds specifically to Dr. Young's declaration that

Puckett's recent MRI "shows no evidence of any residual tumor or meningioma" that

"his representations about a recurring meningioma were based on his medical records, as records from 2015, 2016, and 2019 specifically reference recurring meningioma." Dkt. No. 177.

After reviewing the parties' briefing and the extensive medical evidence submitted, the Court finds that Puckett's current neurological prognosis is not by itself an extraordinary and compelling reason to justify a reduction in his sentence. But, considering Puckett's health overall, that is his vulnerability due to his multiple specific conditions documented by the record, and the COVID-19 pandemic—an argument raised in Puckett's initial motion, *see* Dkt. No. 166 at 1, which the Court only ordered be supplemented, *see* Dkt. No. 169—the Court finds that Puckett's unique susceptibility to serious complications should he contract COVID-19 is an extraordinary and compelling reason for his release. *See United States v. Conner*, 465 F. Supp. 3d 881, 889-90 (N.D. Iowa 2020) ("Numerous courts have held that a defendant's health conditions and the presence of COVID-19 within BOP facilities constitute extraordinary and compelling reasons for compassionate release." (cataloguing some 20 examples)).

III.    None of § 3553(a) factors render inadequate a reduction of the custodial sentence to time served.

A defendant who proffers a reason for a reduction that the Court—no longer bound by § 1B1.3—finds to be extraordinary and compelling must still "convince the [Court] to exercise discretion to grant the motion for compassionate release after considering the Section 3553(a) factors." *Ward*, 11 F.4th at 361 (cleaned up; quoting

*Shkambi*, 993 F.3d at 392); *see also Rainwater*, 2021 WL 1610153, at *3 ("[C]onsideration of the pertinent § 3553(a) factors functions as a reliable cross-check against (and can result in the veto of) the preliminary conclusion that there are extraordinary and compelling reasons to reduce [a defendant's] sentence.").

As of August 12, 2021—more than five months ago, but the date on which the Sentencing Monitoring Computation Data filed in supplement to Puckett's motion was run, *see* Dkt. No. 172 at 4; Dkt. No. 172-1—Puckett had served more than 232 months in custody, which is a sentence roughly equivalent to the sentence Puckett would have served if (1) the Court had applied the lowest end of the guidelines that would have applied had Puckett not lost his 3-level reduction for acceptance of responsibility and (2) Puckett earned "good time" in the BOP. *See Puckett*, 556 U.S. at 131 (Puckett "assisted another man in a scheme to defraud the Postal Service, and confessed that assistance (under questioning) to a probation officer," after which "[t]he officer prepared an addendum to Puckett's presentence report recommending that he receive no § 3E1.1 reduction for acceptance of responsibility, on the theory that true acceptance of responsibility requires termination of criminal conduct." (citation omitted)).

As to the second qualification above, the record reflects that Puckett has been a model inmate, completing more than 200 hours of courses, *see* Dkt. No. 172-2, and earning praise from officials at USP Florence, who described him as "a very positive individual [who] prevented violent altercations here at USP Florence" and "never

participated in a violent act," such that he was "well respected among staff and inmates alike," Dkt. No. 172-3. So the Court will effectively credit Puckett for "good time" earned in considering the § 3553(a) factors.

The Court further believes that Puckett has a solid release plan. *See* Dkt. No. 172-5.

No doubt, Puckett committed a serious crime and then compounded the damage by continuing to engage in criminal conduct while awaiting sentencing, to which—to his credit—he confessed. But Puckett has now served a serious sentence for this conduct. And, during this imprisonment—now approaching 20 years—he has demonstrated that he is not the same man the Court sentenced in 2006. In sum, the Court has considered all the applicable factors, particularly the first two—"(1) the nature and circumstances of the offense and history and characteristics of the defendant" and "(2) the need for the sentence imposed," specifically "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)—and finds that no component of the various factors now applicable renders inadequate the reduced sentence that the Court now imposes.

## Conclusion

The Court **GRANTS** Defendant James Benjamin Puckett's motion compassionate release under 18 U.S.C. § 3582(c)(1)(A) as supplemented [Dkt. Nos. 166, 167, 172], **REDUCES** his sentence to time served, and **ORDERS** that he be

immediately released from custody under the previously imposed conditions of supervised release, *see* Dkt. No. 110.

**SO ORDERED.**

**Signed February 9th, 2022.**

_Ed Kinkeade_

**ED KINKEADE**
**UNITED STATES DISTRICT JUDGE**